MICHIGAN LAND & IRON CO. *v.* CLEVELAND SAWMILL & LUMBER CO.

INJUNCTION—REFUSAL TO SUSPEND.

A court of equity will not further suspend an injunction against the maintenance of a dam whereby the lands of another would be overflowed, on the ground that by such injunction the one who constructed the dam would suffer damages greatly in excess of those caused by such overflow, in that he would thereby be prevented from flowing his logs to his mill, where two suspensions of 60 days each, during the season of the year most favorable for getting out timber, have already been granted, of which suspensions the builder of the dam has negligently failed to take advantage.

Appeal from Marquette; Stone, J.    Submitted April 10, 1896.    Decided April 21, 1896.

Bill by the Michigan Land & Iron Company Limited, to restrain the Cleveland Sawmill & Lumber Company from repairing and operating a certain dam. From a decree for complainant, defendant appeals.    Affirmed.

*Ball & Ball*, for complainant.

*Clark & Pearl*, for defendant.

GRANT, J.    In 1889 one John C. Brown entered into a logging contract with R. K. Hawley and Thomas H. McGraw, by which he agreed to cut, skid, haul, bank, and deliver to them, all the pine from certain lands situated in the county of Marquette, Mich., and on the upper part of Dead river and its tributaries.    One of these tributaries is known as "Clark Creek," which flows into Boyce creek, which flows into Dead river.    Neither of the first two streams is navigable.    The logs could not be floated down either of them without building dams and creating a flood.    In 1890 Brown built a dam across Clark creek, situated partly on the lands of Hawley & McGraw, and partly on the lands of the complainant. By reason of this dam, about 120 acres of the complainant's land were overflowed, and the timber destroyed. Of the construction of this dam the complainant had no knowledge, and first obtained positive knowledge of it about August, 1892, when it presented a claim to Brown for damages, which was never paid.    Brown failed, and surrendered his contract to Hawley & McGraw, who, in turn, sold and assigned the entire business to defendant. The dam was used to get out logs during the seasons of 1891 and 1892.    It was not used during the seasons of 1893 and 1894, except in the spring and summer of 1894, when it was used to create floods to help drive the logs below into the main stream.    In the winter of 1894-5 de-

fendant cut and banked upon Clark creek, above the dam, mostly on complainant's land, about 2,000,000 feet of logs. The defendant obtained no permission from the complainant to so use its land, and complainant was not aware of it until the logs were banked and ready for the spring drive. Meanwhile a portion of the dam had been carried away, and the defendant in May applied to the complainant's agent at Marquette to purchase some timber to rebuild it. Complainant refused, and forbade the defendant to rebuild the dam or flood its lands. The defendant, however, was proceeding to rebuild the dam, when, on June 17, 1895, complainant filed this bill to restrain the construction of the dam and the flooding of its lands.

The answer filed admits the ownership of the lands, and the construction of the dam; the flowage of the complainant's lands in consequence; that, since the failure of Brown, it has owned and maintained the dam for the purpose of carrying on its lumbering operations; denies any serious injury to the lands of the complainant; alleges that the dam was absolutely necessary for the purpose of providing a flow of water to flow its logs over the rapids lying a short distance below the dam; that it has about $10,000 worth of pine saw logs hung up in said creek above the rapids, and within the flowage of the dam, which cannot be brought down to the defendant's mill, situated at the mouth of Dead river, without the use of the dam; that it has standing timber situated above said dam of the value of $10,000, which will become entirely worthless if the defendant is restrained from building and using the dam; that it would be inequitable and unjust to restrain it from repairing, maintaining, and operating said dam, thus causing an injury to it 20 times the amount that it is possible for the complainant to suffer.

Upon the filing of the bill a temporary injunction was granted. Upon the coming in of the answer the court made an order suspending the temporary injunction for

the period of 60 days, upon the filing of a bond to the complainant to pay it such sum as should be assessed to the complainant as damages. On September 3, 1895, the court granted a further extension of 60 days to enable the defendant to get out its logs. Upon November 5th further extension was applied for, which was denied. Proofs were then taken in open court upon the issues involved, and upon the hearing a final decree was entered, fixing the amount of damages, and perpetually enjoining the defendant from using the dam and flooding the lands of the complainant. The learned circuit judge, in deciding the case, said:

"The court has exercised a great deal of leniency in this matter, having first given an extension of 60 days, and then another extension of 60 days, during the best of our summer and fall season,—being four months' time,— in which to get out this timber; and, under the testimony and facts known to the court, the season, it seems to me, was pretty favorable last season, in this Upper Peninsula, —somewhat exceptionally so. * * * I think the court has given the defendant ample opportunity to get these logs out. I find that this timber was put in here without any knowledge or acquiescence on the part of the complainant, and it is simply saying to the complainant it shall have the enjoyment of its own property."

The appeal is taken to this court for the sole purpose of obtaining a further extension of time, a further use of the dam, and a further flowing of the complainant's lands, to enable the defendant to get out the remainder of its logs. Twice the defendant appealed to the conscience of the circuit court in equity, which, by mere grace, and not by any absolute right, granted the favor. Both parties own timber land along these creeks. Complainant desires to sell its timber, which is of comparatively little value unless it can be floated down these streams. The defendant has the entire control of the streams below, and is undoubtedly seeking to take advantage of the situation to enhance its own interests. It is contended on behalf of the defendant that the damage to it will be so great, by

the loss of its logs, while that of the complainant will be so small, that the court should permit the defendant to make use of the complainant's lands, although it has no legal right to do so. Other considerations, however, enter into the question, and we are not prepared to say that they should be ignored. We do not feel justified in overruling the conclusion reached by the learned circuit judge, who was familiar with the situation, saw the witnesses, and concluded that the gracious hand of the court had been extended to the relief of the defendant to a reasonable limit, and that it had not improved the opportunity with the diligence which, under the circumstances, was required.

The decree will be affirmed, with costs.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.